IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TAMMY R. COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-0236-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Tammy Cox's applications for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of low back pain, obesity, and anxiety/depression, but retained the residual functional capacity ("RFC") to perform semi-skilled work as a cost clerk, data entry clerk, and administrative clerk.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications on March 25, 2012. Her amended applications alleged a disability onset date of June 9, 2012, her fiftieth birthday.

The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on August 29, 2013, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on January 28, 2015, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

(8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ erred by failing to properly: (1) weigh the medical opinion evidence; (2) evaluate her credibility; and (3) determine her RFC. Plaintiff also argues (4) the Appeals Council erred by failing to consider new and material evidence. These arguments are without merit.

**I.     The ALJ did not err in weighing the medical opinion evidence.**

**A.     The ALJ did not err in weighing her treating physician's opinion.**

Plaintiff first argues that the ALJ erred in weighing the opinion of her treating physician, Dr. Robert Buzard, M.D. ("Dr. Buzard"). Dr. Buzard treated Plaintiff from December 2011 through at least June 2013, with a one-year gap between May 2012 and May 2013 when Plaintiff apparently received no treatment for her back at all. Despite this treatment gap, on June 24, 2013, Dr. Buzard completed a "Multiple Impairment Questionnaire" for her in which he opined she was able to sit three hours total and stand/walk two hours total in an eight-hour workday. R. at 349. The ALJ gave little weight to Dr. Buzard's opinion because it was inconsistent with the treatment records, the "mostly normal" objective medical evidence, and Plaintiff's testimony. R. at 24.

Plaintiff argues Dr. Buzard provided extensive support for his opinion, and the fact that she can walk and lift twenty pounds does not contradict his opinion that she cannot work forty hours a week. Plaintiff acknowledges she did not have any diagnostic imaging of her spine done, but contends this was because she could not afford it, and an inability to afford medical care cannot be held against her. Alternately, she contends that even if the ALJ did not err by

3

declining to give Dr. Buzard's opinion controlling weight, he erred by not giving Dr. Buzard's opinion greater weight under the factors provided in 20 C.F.R. § 404.1527 and § 415.927.

Where the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if it is well-supported and consistent with other evidence in the record. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. *Id.* "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Because the ALJ gave good reasons for discounting Dr. Buzard's opinion, there is no error here. To begin, the Court notes that the ALJ did not discount Dr. Buzard's opinion completely; his RFC determination actually embraced Dr. Buzard's opinion that Plaintiff could lift and carry twenty pounds. R. at 22, 24, 350. The ALJ discounted only that portion of Dr. Buzard's opinion stating Plaintiff could only sit for three of eight hours and stand or walk for two of eight hours, needed multiple breaks per day, would have good and bad days, and would miss more than three days of work per month.

This decision is appropriate because the limitations found by Dr. Buzard were inconsistent with the record as a whole. The record showed: Plaintiff's back examinations were mostly normal; Plaintiff received conservative treatment for her back pain, indeed, she did not

4

receive any treatment during a one-year period; Plaintiff's regular activities of daily living required fairly extensive use of her back (including caring for pets, preparing meals, doing laundry, dusting, watering her garden, driving, and shopping); and Plaintiff actively searched for a job during this period. R. at 22-24, 192, 218-22, 251, 259, 261, 264-65, 269, 273-74, 277, 281, 283, 307, 318, 320, 345, 347. Consequently, the ALJ did not err in giving Dr. Buzard's opinion little weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (holding "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain"); *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) (seeking work while alleging disability is inconsistent with claims of disability); *Moore v. Colvin*, No. 4:12-cv-539-CDP, 2013 WL 3057231, at *12 (E.D. Mo. June 17, 2013) (observing conservative treatment for back pain, including a year-long gap in treatment, is inconsistent with disability).

As for Plaintiff's contention that she would have undergone an MRI but could not afford it,[2] the relevant question is whether Plaintiff ever sought free or reduced cost treatment. There is no evidence that she did. Consequently, the ALJ could consider her failure to pursue treatment in discounting Dr. Buzard's opinion that Plaintiff's back impairment substantially limited her ability to work. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that in deciding how to weigh a claimant's conservative treatment, the ALJ may consider whether the claimant sought low-cost or free health care that would have provided more treatment options).

---

[2] The Court assumes her statement is true, but notes there is no evidence in the record that Plaintiff is indigent. In fact, she had health insurance during the relevant period, albeit with a high deductible. R. at 280.

5

## B. The ALJ did not err in weighing her treating counselor's opinion.

Plaintiff also contends the ALJ erred in weighing the opinion of her treating counselor, Stephen Pringle, L.P.C. ("Mr. Pringle").[3] Mr. Pringle completed a Psychiatric/Psychological Impairment Questionnaire on July 10, 2013, in which he found her ability to work was severely impaired due to mental limitations. R. at 355-62. Among other things, he opined that she was markedly limited (defined as effectively precluded) in: her ability to maintain attention for extended periods; her ability to work in coordination with or proximity to others without being distracted by them; and her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. at 357-59.

The ALJ gave little weight to his opinion because the limitations he found were inconsistent with the lack of any: mental health treatment by a licensed psychologist or psychiatrist, emergency room visits for mental health issues, or hospitalization for mental illness. R. at 24. The ALJ also noted that an L.P.C. is not an "acceptable medical source" whose opinion must be given controlling weight,[4] and that Mr. Pringle's own treatment notes were inconsistent with his conclusions. *Id.*

Plaintiff acknowledges Mr. Pringle's opinion was not due controlling weight, but argues the ALJ gave short shrift to the § 404.1527(c)(2) and § 416.927(c)(2) factors in evaluating his opinion as a medical source. She also asserts her mental health treatment "has been limited by her lack of comprehensive health insurance." Pl.'s Br. (Doc. 6) at 14.

---

[3] An L.P.C. is a Licensed Professional Counselor. *Strickland v. Astrue*, No. 4:07-cv-01228-BD, 2009 WL 285865, at *4 (E.D. Ark. Feb. 12, 2009).

[4] An L.P.C.'s opinion is considered and weighed as a medical source. 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 416.913(a), 416.927(a)(2).

The Court holds the ALJ did not err in weighing Mr. Pringle's opinion. The ALJ articulated valid reasons which are supported by the record for giving Mr. Pringle's opinion little weight. The ALJ found Plaintiff had moderate limitations in social functioning, and mild limitations in concentration, persistence, or pace. R. at 22. And despite Plaintiff's statements that she could not go shopping or be around people, she shopped once per week, went outside daily, attended church, and spent time with friends and family. R. at 44, 219-22. This indicated she was not disabled as Mr. Pringle suggested. *Medhaug*, 578 F.3d at 817.

The ALJ also properly considered that Plaintiff took only mild psychotropic medications—Prozac and Cymbalta, received no psychiatric treatment from a licensed psychologist or psychiatrist, and had no emergency room visits or hospitalizations due to mental symptoms, R. at 24. This weighs against a finding of disability. *See Vanlue v. Astrue*, No. 4:11-cv-595-TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (minimal and conservative mental health treatment weigh against a finding of disability).

Further, Mr. Pringle's treatment notes are inconsistent and fail to support the level of limitation he alleged. Nearly all his treatment notes state Plaintiff was anxious and depressed with congruent affect, even when the rest of his note indicated she was improving. R. at 306, 308-10, 312, 329-30, 333-37, 341. His treatment notes from November 2012 through March 2013 show that Plaintiff was doing better, and she consistently denied suicidal ideation. R. at 332, 336-37, 339-42.

As for her claim that her mental health treatment was limited by her lack of comprehensive insurance, there is no evidence that she ever sought free or reduced cost mental health treatment. Thus, the ALJ could view her failure to receive or pursue treatment beyond counseling as inconsistent with her allegations of total disability. *Riggins*, 177 F.3d at 693.

In sum, the ALJ did not err in weighing the medical opinion evidence.

**II.     The ALJ properly analyzed Plaintiff's credibility.**

Plaintiff argues the ALJ's credibility analysis is not supported by substantial evidence. Plaintiff argues that the fact that she can perform "sporadic" activities of daily living and that she looked for a job does not mean she can obtain, and maintain, full-time employment. Pl.'s Br. at 17. Plaintiff also contends her inability to pay justifies her failure to undergo any radiological testing that might provide objective evidence of a disabling back impairment.

Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). When the ALJ discounts a claimant's credibility, he must explain why he did so. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

To begin, the Court notes Plaintiff does not contest an important reason why the ALJ found she was not credible, namely, that the objective medical evidence did not support her claims.

Plaintiff also misconstrues the ALJ's observation about her activities of daily living. The record does not show that Plaintiff can perform these activities of daily living only sporadically; it shows she can perform them *consistently*. Further, almost all of these activities involve Plaintiff using her back, a crucial component of her disability claim. The fact that Plaintiff can perform these activities supports the ALJ's findings that her physical limitations are not as great as she alleges.

Of course, the fact that she looked for a job does not mean she can maintain full-time employment, but it is a factor to consider in judging the credibility of her claim that she is totally disabled. *See Bentley*, 52 F.3d at 786.

Finally, as discussed previously, Plaintiff has not shown that her failure to obtain treatment, such as getting an MRI, was the result of any inability to pay.

Because the ALJ has given good reasons for discrediting Plaintiff's testimony, the Court defers to his credibility determination.  *See Gregg*, 354 F.3d at 713.

### III.     The ALJ did not err in determining Plaintiff's RFC.

Plaintiff also argues the Court should reverse or remand because the ALJ "did not cite to any evidence that supports the physical or mental restrictions" he found in determining Plaintiff's RFC.  Pl.'s Br. at 15.

This argument is belied by the text of the ALJ's decision.  The ALJ devoted two pages of his opinion to explaining why Plaintiff was capable of performing light work with the restrictions he prescribed.  R. at 22-24.   The ALJ made a detailed credibility finding; examined what Plaintiff's daily activities suggested her limitations were; discussed what the medical evidence suggested her limitations were; and determined how each of Plaintiff's severe impairments affected her ability to work—including embracing Dr. Buzard's opinion that she could lift up to twenty pounds.  R. at 22, 40, 350.  This discussion adequately explained the RFC determination. *See* SSR 96-9p (explaining that although the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion and cite specific evidence, the ALJ need not follow each RFC limitation with a *list* of the specific evidence on which the ALJ relied).

Hence, there was no error.

### IV.      Remand is not warranted based on new evidence submitted to the Appeals Council.

Finally, Plaintiff contends the Appeals Council erred by finding a psychiatric/psychological impairment questionnaire completed on February 3, 2014, by psychiatrist Dr. Jagpal Gosal, M.D., did not provide a basis for revisiting the ALJ's decision. Plaintiff argues the questionnaire confirms she suffers from disabling mental limitations.

This argument is without merit.  The ALJ decided Plaintiff's case through August 29, 2013, and Dr. Gosal completed his questionnaire almost five months later.  Although Plaintiff's mental condition in February 2014 may be rooted in her mental condition as of August 2013, the questionnaire is of limited value in determining whether Plaintiff suffered from a mental disability *as of* August 29, 2013.  Further, check-mark answers in the questionnaire indicating Plaintiff suffered from appetite disturbance, suicidal ideation, and episodes of decompensation are inconsistent with the credible medical evidence of record from the relevant period.  R. at 332-42, 358-64, 383, 385-87.  Consequently, the Court cannot say the Appeals Council erred in holding the new evidence did not warrant changing the ALJ's decision, or that the ALJ's decision is no longer supported by substantial evidence in the record.

Remand on this basis is not warranted.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   September 16, 2016           /s/ Greg Kays
                                     GREG KAYS, CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT